Caroline ANDERSON, Appellant,

v.

STATE of Missouri and Board of Regents for Central Missouri State University, Respondents.

No. WD 37675.

Missouri Court of Appeals,
Western District.

March 18, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1986.

Application to Transfer Denied
June 17, 1986.

Andrew J. Gelbach, Leonard K. Breon, Warrensburg, for appellant.

Hibberd V.B. Kline, III, Warrensburg, for respondents.

Before CLARK, C.J., and SHANGLER and TURNAGE, JJ.

TURNAGE, Judge.

Caroline Anderson filed suit against the State and the Board of Regents for Central Missouri State University alleging injuries resulting from a fall on University property. The trial court entered summary judgment in favor of the State and the University on the theory the suit was barred by sovereign immunity.

Anderson contends the legislature has waived sovereign immunity by two enactments in 1983, the University's operation of the lodge was a proprietary function, and notice was not given to Anderson that the court was going to treat the motion to dismiss as a motion for summary judgment. Affirmed.

Anderson alleged that she fell as a result of the dangerous condition of a sidewalk located on the grounds of Pertle Springs Lodge. Pertle Springs Lodge is owned by the University and contains a golf course, swimming pool, lake, and lodge. At the time of her injury Anderson was going to the lodge as a guest of those who had rented it for a wedding reception. The

petition contained allegations sufficient to allege a dangerous condition of property as set out in § 537.600(2), RSMo 1978. Anderson filed an amended petition which alleged that the University carried liability insurance to cover Anderson's claim.

The State and University filed motions to dismiss in which each claimed immunity under § 537.600 because of sovereign immunity. In addition, the University filed an affidavit stating that it did not have liability insurance to cover Anderson's claim.

In October of 1984, the court gave Anderson time to conduct discovery to determine whether or not the University had liability insurance to cover Anderson's claim. Anderson filed a motion for production of documents seeking to inspect or copy all policies of insurance carried by the University in effect on June 26, 1982, the date of Anderson's fall. The University filed a response in November of 1984 permitting Anderson to inspect and copy the policies. Nothing further occurred until October 22, 1985, when the court entered judgment in favor of the State and University.

▇ Anderson now concedes that the University did not carry liability insurance to cover her claim and that there was no self-insurance plan in effect. Anderson contends the University was not required to carry liability insurance in order to be subject to liability because the legislature adopted § 34.260 and § 105.711, RSMo Supp.1984. Anderson contends the enactment of these sections in 1983 nullifies the construction of § 537.600 announced in *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864 (Mo. banc 1983). Anderson contends the court erroneously held in *Bartley* that sovereign immunity was waived by § 537.600 only when the govermental entity had liability insurance or a self-insurance plan in effect. Anderson contends that by the passage of §§ 34.260 and 105.711 in 1983 the legisla-

ture announced its true intent that it had not intended to require liability insurance to be a prerequisite to the waiver of sovereign immunity when it passed § 537.600 in 1978.

Anderson's argument has been fully explored and answered in *State ex rel. Missouri Highway and Transportation Commission v. Appelquist*, 698 S.W.2d 883, 892–98 (Mo.App.1985). In *Appelquist* the court held that §§ 34.260 and 105.711 would not be given retroactive effect and therefore had no bearing on a claim which occurred prior to September 28, 1983, the effective date of both sections. This court agrees with the Southern District's analysis in *Appelquist* and likewise holds that the sections urged as revealing the legislature's true intent will not be applied retroactively to Anderson's claim which occurred in June of 1982, over a year before the effective date of such sections.

▇ In addition to the well reasoned opinion in *Appelquist*, this court would note that in *State ex rel. St. Louis Housing Authority v. Gaertner*, 695 S.W.2d 460, 463 (Mo. banc 1985), the court held that § 34.260, RSMo Supp.1984, applies to insurance for state controlled vehicles. A state controlled vehicle is not involved in this case. In addition to the reason discussed in *Appelquist* concerning § 105.711 it should be noted that the legislature adopted § 105.726 at the same time it adopted § 105.711. In § 105.726 the legislature stated that §§ 105.711 to 105.726 should not be construed to broaden the liability of the state beyond the provisions of §§ 537.600–537.610, nor to abolish or waive any defense at law which might otherwise be available to any agency of the state. Thus, the legislature made clear in § 105.726 that § 105.711 should not be construed to impose liability contrary to the holding in *Bartley*.

▇ Anderson further states that the legislature has now made it crystal clear that *Bartley* was wrongly decided when it

repealed § 537.600 in 1985 and adopted a new section. The new section contains subsection 2 which provides as follows:

> The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

*Appelquist* also held this amendment would not be applied retroactively. In addition to the reason stated in *Appelquist*, that amendment cannot be applied retroactively because under the holding in *Bartley* a governmental entity enjoyed immunity under § 537.600 if it did not carry liability insurance or adopt a plan of self-insurance. In *Department of Social Services v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332[2, 3] (Mo. banc 1985), the court stated:

> Statutes are generally presumed to operate prospectively, "unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication."

The court further pointed out that if the presumption favoring the prospective operation is overcome, the inquiry then focuses on whether or not the statute falls within the constitutional proscription against retrospective application. The constitutional ban applies when the statute takes away or impairs any existing vested right. *Id.* There is nothing to indicate that the legislature intended the addition to § 537.600 adopted in 1985 to be applied retroactively but even if such intent could be found, the State and its agencies enjoyed a vested right of immunity under the construction of § 537.600 adopted in *Bartley*. The judicial construction of that statute by the supreme court became as much a part of the statute as the text itself. *Appelquist*, 698 S.W.2d at 895[11]. Thus, the constitutional prohibition against retroactive application of statutes contained in Article 1 § 13 bars any retrospective application of the addition to § 537.600 passed in 1985.

■ Anderson next contends that if its attack on *Bartley* is not successful then the University is liable because its operation of the lodge at Pertle Springs Lodge at the time Anderson fell was a proprietary rather than a governmental function. Anderson contends that this court in *Fowler v. Board of Regents for the Central Missouri State University*, 637 S.W.2d 352 (Mo.App.1982) held that the proprietary-governmental dichotomy applies to the University. In *Fowler* this court did not hold as Anderson contends but simply observed that some functions performed by school districts may be considered proprietary. This court did not hold that the University was subject to the application of a proprietary-governmental function analysis. Anderson contends that *State ex rel. Allen v. Barker*, 581 S.W.2d 818 (Mo. banc 1979), made application of the proprietary-governmental dichotomy applicable to all governmental units. Whatever may be said of *Allen*, the court made it clear in *State ex rel. Missouri Department of Agriculture v. McHenry*, 687 S.W.2d 178, 181–82[7–10] (Mo. banc 1985), that the proprietary-governmental dichotomy applies only to municipal corporations and not to activities of the state. Under *McHenry*, it is clear that the proprietary-governmental dichotomy does not apply to the University since it is not a municipality.

■ Anderson finally contends the court failed to give her 10 days notice that it was considering the motions to dismiss as motions for summary judgment. Under Rule 55.27(a) if matters outside the pleadings are presented to the court and not excluded, a motion to dismiss for failure to state a claim upon which relief can be granted shall be treated as a motion for summary judgment and disposed of as provided in Rule 74.04. Rule 74.04(c) requires a motion for summary judgment to be served at least 10 days before the time fixed for the hearing. Anderson contends she was not given 10 days notice.

As mentioned above, the University filed an affidavit in February of 1985 stating that it did not have insurance for the pur-

pose of proving that it was immune from liability and suit under *Bartley.* The court did not exclude the affidavit and it is beyond question that it was considered by the court. Thus, in February of 1985 Anderson was charged with knowledge that the court was considering matters outside the pleadings and that the motion to dismiss would thereby be converted to a motion for summary judgment. In *Shafer v. Western Holding Corp.,* 673 S.W.2d 117, 120[3] (Mo. App.1984), this court held that under similar circumstances the 10 days notice was not required. As in *Shafer,* Anderson was not surprised when the court considered the motions to dismiss as motions for summary judgment and the 10 days notice of Rule 74.04 was therefore not required. For the reasons stated in *Shafer,* the trial court was not required to give 10 days notice that it was considering the motions to dismiss as motions for summary judgment.

The judgment is affirmed.

All concur.