STATE of Missouri, ex rel. CARLUND CORPORATION, Relator,

v.

The Honorable William F. MAUER, Respondent,

Elgard Corporation, Intervenor.

No. WD 46833.

Missouri Court of Appeals, Western District.

March 23, 1993.

358

James H. McLarney, W. Ann Hansbrough, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, for appellant.

Greg T. Spies, Leonard L. Wagner, Watson, Ess, Marshall & Enggas, Kansas City, for respondent.

Candis Young, Kansas City, for intervenor.

Before ULRICH, P.J., LOWENSTEIN, C.J., and FENNER, J.

ULRICH, Judge.

Carlund Corporation, a Minnesota corporation (Carlund), seeks this court's writ of prohibition to preclude enforcement of the order of the Honorable William F. Mauer, Judge, entered September 16, 1992, staying Carlund's affirmative claims in its pending lawsuit until Carlund demonstrates reinstatement of its authority to do business in Missouri. In January 1990, Carlund filed suit in two counts against several entities alleging that named defendants owed Carlund money for work it performed during construction of the Crown Center Parking Garage in Kansas City, Missouri, in 1989. The question presented is whether Carlund—which no longer conducts business in Missouri and which is not now authorized to conduct business in this state and was not when its alleged cause of action arose, but which was authorized to do business in Missouri when it filed suit—can proceed with its suit to recover compensation for work it purportedly performed in Missouri. The preliminary writ in prohibition issued September 18, 1992, is quashed and held for naught.

In January 1990, Carlund sued Crown Center Redevelopment Corporation (Crown Center), Elgard Corporation (Elgard), and J.H. Mackay Electric Company, Inc. (Mackay). Carlund alleged that Elgard was the general contractor of a parking garage construction project and that Mackay was Elgard's subcontractor. Carlund averred that Mackay obtained Carlund's services to perform a portion of Mackay's assigned work on the project. The project commenced in June 1989, and Carlund was terminated from the project on October 31, 1989. When Carlund performed work on the project, it was not authorized to transact business in Missouri. Carlund claims that after November 1, 1989, it transacted no more business in this state.

On December 8, 1989, Carlund obtained a certificate of authority to transact business in Missouri from the Missouri Secretary of State. On January 4, 1990, Carlund filed the underlying suit in Jackson County. On June 24, 1992, Carlund's authority to transact business in Missouri was terminated by the Missouri Secretary of State, and that authority has never been reinstated.

Mackay moved in the underlying case to dismiss the affirmative claims of Carlund and the two co-plaintiffs bringing derivative claims. Mackay averred in its motion to dismiss that when the motion was filed, Carlund was not authorized to transact business in Missouri pursuant to section 351.574, RSMo 1986.

On September 16, 1992, the trial court stayed Carlund's affirmative claims until Carlund demonstrated reinstatement of its authority to transact business in Missouri. In a bifurcated proceeding, the trial court tried the issues which did not involve Carlund's affirmative claims.

I.

Carlund contends as its first point that the trial court erred in applying section 351.574, RSMo Supp.1992, and not section 351.635, RSMo 1986 (repealed 1990). Carlund's alleged cause of action accrued and suit was filed before the effective date section 351.635 was repealed and replaced by section 351.574. Carlund claims that section 351.695, RSMo 1986, requires application of section 351.635 (repealed) and not section 351.574 because application of the new statute violates section 351.695 which precludes impairing, diminishing, and affecting relator's pending action and the rights acquired by relator.

Section 351.635 (repealed) stated in part: Every foreign corporation now doing business in or which may hereafter do business in this state which shall neglect

or fail to comply with the provisions of subsection 1 of section 351.570 shall be subject to a fine ... in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether *arising out of the contract or tort,* while the requirements of this chapter have not been complied with.

§ 351.635, RSMo 1986 (repealed 1990).

Section 351.574 states in pertinent part:

1. A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority.

2. The successor to a foreign corporation that transacted business in this state without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding based on that cause of action in any court in this state until the foreign corporation or its successor obtains a certificate of· authority.

3. A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor requires a certificate of authority. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor obtains the certificate.

4. Every foreign corporation now doing business in or which may hereafter do business in this state without a certificate of authority shall be subject to a fine of not less than one thousand dollars to be recovered before any court of competent jurisdiction; and ... in addition to which penalty, no foreign corporation, failing to comply with this chapter, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort, while the requirements of sections 351.572 to 351.604 have not been complied with.

5. Notwithstanding subsections 1 and 2 of this section, the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this state.

§ 351.574, RSMo Supp.1992.

Section 351.695 states:

All rights, privileges, immunities and franchises vested or accrued under the provisions of any law in force prior to the enactment of this chapter, and all pending suits and rights of action conferred shall not be impaired, diminished or affected hereby, or by the repeal of any such prior laws. Any liability or penalty incurred under prior laws prior to the repeal thereof shall not be impaired, diminished or affected hereby. All acts and laws not expressly repealed hereby shall continue in full force and effect.

§ 351.695, RSMo 1986.

Resolution of whether section 351.635 (repealed) or section 351.574 applies requires determination of whether section 351.574 is procedural or substantive. Newly implemented remedial or procedural statutory provisions operate retrospectively unless the legislature expressly provides otherwise. *Wilkes v. Missouri Highway & Transp. Comm'n.,* 762 S.W.2d 27, 28 (Mo. banc 1988).

The Court in *Wilkes* stated,

Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.

*Id.* Thus, absent expressed preclusive legislative intent, statutes which are procedural or remedial apply to all actions falling within their terms, whether commenced before or after enactment. *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 661 (Mo. banc 1986); *Scheidegger v. Greene,* 451 S.W.2d 135, 137 (Mo.1970).

Except for subsection 351.574.4, section 351.574 is procedural and not substantive. Section 351.574 imposes requirements on foreign corporations that do business in Missouri without a certificate of authority. Additionally, section 351.574 imposes requirements on the successors and assigns of foreign corporations that previously transacted business in this state without authority who desire to "maintain a proceeding based on" a cause of action arising out of that business. § 351.574.2. Section 351.574 does not "create, define or regulate rights." *Wilkes*, 762 S.W.2d at 28. Section 351.574 prescribes a method of enforcing rights or obtaining redress for their encroachment and does not affect any existing substantive right or related duty.

▆▆▆ Subsection 351.574.4 is the single subsection of the statute that applies prospectively only. This subsection imposes a penalty of not less than one thousand dollars on every foreign corporation now doing business in or which may hereafter do business in this state without a certificate of authority. § 351.574.4. Laws providing for penalties and forfeitures are always given only prospective application. *U.S. Life Title Ins. Co. v. Brents*, 676 S.W.2d 839, 842 (Mo.App.1984). Retrospective application of laws providing for penalties and forfeitures would render the statute unconstitutional. *Id.* Although the balance of subsection 351.574.4 is not punitive, this part of the subsection is punitive. Punitive prospective provisions within the subsection are evidence that the legislature intended that the entire subsection have prospective application. *Id.*

▆▆▆ Subsection 351.574.2 reflects legislative intent that it be applied retrospectively. Subsection 2 provides, in part, that the successor to a foreign corporation "that transacted business" in Missouri without a certificate of authority may not maintain a proceeding in Missouri's courts on the cause of action "arising out of that business" until it obtains a certificate of authority. § 351.574.2. "Transacted" is past

tense. A primary rule of statutory construction requires courts to ascertain the legislature's intent, considering the words of the statute in their plain and ordinary meaning. *State ex rel. Osborne v. Goeke*, 806 S.W.2d 670, 672 (Mo. banc 1991). The legislature intended that this subsection apply retrospectively. Subsection 3 provides that a court may stay a proceeding "commenced" by a foreign corporation until the court determines whether a certificate of authority must be obtained. § 351.574.3. Thus, subsection 3 instructs the court of what action it can take to determine whether a foreign corporation is in compliance with Missouri statutes and authorizes the court to stay the proceedings until the foreign corporation complies with the law. Neither of these subsections of the statute are restricted to actions accruing or suits filed after the statute became law. The legislature intended that at least these two subsections of section 351.574 apply retrospectively. Subsection 351.574.2 is applicable in this case and is discussed when addressing point II. Point I is denied.

## II.

Carlund claims as its second point that the trial court erred in staying its affirmative claims.. The court stayed Carlund's claims because the certificate authorizing the company to do business in Missouri, which Carlund possessed when it filed suit, was subsequently forfeited. Carlund avers that since it does no business in Missouri, section 351.635 (repealed)[1] does not compel it to continue to be authorized to transact business in Missouri prerequisite to prosecuting its case to conclusion in Missouri's courts. Carlund emphasizes that, despite being authorized to conduct business in Missouri when it filed suit, it was not then transacting business in Missouri and has not conducted business in Missouri since November 1, 1989.

▆▆▆ Section 351.635 (repealed) compelled every foreign corporation doing business in Missouri to possess a certificate of authori-

---

1. Because subsection 351.574.2 applies and not section 351.635 (repealed), Relator's claim is analyzed pursuant to the requirements of subsection 351.574.2, although the case law applying section 351.635 is instructive.

ty to transact business in this state when it filed suit, but any foreign corporation not doing business in Missouri when it filed suit in Missouri's courts was not compelled to possess a certificate of authority in order to sue. *Jones v. Fliteline Motors, Inc.,* 809 S.W.2d 179, 182 (Mo.App.1991); *Benham v. Cox,* 677 S.W.2d 429, 431 (Mo.App. 1984).

In *Benham,* Manufacturers and Wholesalers Indemnity Exchange (Manufacturers) was a reciprocal insurance company which had been licensed to transact business in Missouri since 1919. The company was placed in receivership in Colorado, and authority to do business in Missouri was terminated concurrently with the commencement of the receivership. A receiver was appointed by the District Court of Colorado, and the current receiver was acting in the Missouri case to register a foreign judgment in the Harrison County Circuit Court. The respondents moved to dismiss the registration petitions on the ground that the judgment creditor, Manufacturers, was not entitled to maintain an action in a Missouri court because Manufacturers, a foreign corporation, was not in compliance with section 351.570, RSMo 1978, and was barred from Missouri's courts by section 351.635, RSMo 1978. The appellate court concluded that section 351.635, RSMo 1978, excluded foreign corporations from prosecuting suits in Missouri where the corporation "is ... 'now doing business in ... this state ...,' and fails to comply with § 351.-370, RSMo 1978." *Benham,* 677 S.W.2d at 431. The court said,

> It seems unmistakable that § 351.635, RSMo 1978 was intended by the legislature as a coercive measure designed to encourage compliance by foreign corporations with the registration requirements of § 351.370, RSMo 1978. This latter section applies only to corporations who are doing or intend to do business in Missouri and thus, if a foreign corporation is not subject to § 351.370, RSMo 1978, there is no purpose, under this hypothesis, to apply a coercive penalty. On this ground ... foreign corporations not engaged in intrastate business in

Missouri are not to be denied access to Missouri courts.

*Id.* The court said, "[I]t would appear to be of no consequence that Manufacturers formerly did business in Missouri, particularly where the company was appropriately registered and certified at the time as a foreign insurance company authorized to conduct its business in the state." *Id.* The court concluded by stating that "§ 351.635, RSMo 1978, can only be applied to deny a foreign corporation the affirmative use of Missouri courts if that corporation is doing business in Missouri without procuring the certificate of authority provided in § 351.-570, RSMo 1978." *Id.* at 432.

In the more recent case of *Jones v. Fliteline Motors, Inc.,* Fliteline Motors, Inc. (Fliteline), an Arkansas Corporation, was sued by lessors for unpaid rent and for other damages. Lessee, Fliteline, moved the trial court to set aside or vacate the default judgment rendered against it. The trial court denied the motion, and Fliteline appealed. The appellate court determined that section 351.635 did not bar a foreign corporation access to Missouri's courts where the foreign corporation "(1) was previously authorized to do business in Missouri, and (2) forfeited its charter but continued to do business in Missouri, and (3) ceased doing business in Missouri before it filed its motion to set aside or vacate the default judgment." *Fliteline,* 809 S.W.2d at 182.

*Benham* and *Fliteline* considered whether under section 351.635 (repealed) foreign corporations no longer doing business in Missouri but previously authorized to do business in this state had lost their legal ability to utilize Missouri's courts when they forfeited their certificates of authority to transact business. The courts in the two cases concluded that they did not. *Benham* classified section 351.635 (repealed) as coercive by design to encourage compliance by foreign corporations doing business in Missouri with statutory registration requirements. *Benham,* 677 S.W.2d at 431. However, section 351.635 (repealed) did not impose on foreign corporations the requirements of section 351.574.2.

In this case, unlike *Benham* and *Fliteline*, the foreign corporation, Carlund, was not authorized to transact business in Missouri when it conducted business in this state and when its purported cause of action germinated from that business. Section 351.574.2 precludes the "successor to a foreign corporation that *transacted* business" in Missouri without authority to maintain a cause of action arising from that business until "the foreign corporation or its successor" obtains authority to transact business in Missouri. Additionally, section 351.574.2 precludes the assignee of a foreign corporation that transacted business in Missouri without authority from maintaining the assigned cause of action that resulted from that business until the assignee or the foreign corporation obtain a certificate of authority. For the legislature to intend that a greater burden be imposed on a successor to a foreign corporation that transacted business in Missouri without a certificate of authority or to the corporation's assignees than on the foreign corporation itself is incongruous. Therefore, the legislature must have intended by section 351.574.2 that for a foreign corporation which transacted intrastate business in Missouri without authority to maintain a cause of action that arose from that business, it must acquire a certificate of authority to transact business in Missouri. Section 351.635 (repealed) did not impose on foreign corporations the requirements of section 351.574.2. Thus, Carlund, a foreign corporation that did not possess a certificate of authority to transact business in Missouri when it conducted business in this state and when its purported cause of action arose is required to possess a certificate of authority to maintain its alleged cause of action in the Circuit Court of Jackson County.

The meaning of "maintain" is relevant to determining whether the legislature intended that a foreign corporation which conducted intrastate business in Missouri without possessing a certificate of authority to do business in this state must acquire and continue to possess such a certificate to prosecute its claim to conclusion or whether the foreign corporation is simply re-quired to possess a certificate of authority to file suit. Both sections 351.635 (repealed) and 351.574 utilize the word "maintain." Section 351.635 (repealed) stated that a foreign corporation *doing business* in Missouri could not "maintain" a suit in Missouri's courts without complying with the requirements of the chapter. Section 351.574.1 requires that a "foreign corporation *transacting business*" in Missouri without authorization may not *"maintain* a proceeding in any court within this state until it obtains a certificate of authority." (Emphasis added.)

Section 351.574.2 utilizes the word "maintain" also. This subsection requires that the "successor to a foreign corporation that *transacted business*" in Missouri without authority and the assignee of any cause of action arising out of that business may not "maintain" a proceeding based on the cause of action until "the foreign corporation or its successor" obtains authority to transact business in Missouri. § 351.574.2 (emphasis added). The provisions of subsection 351.574.2 are absent in section 351.-635 (repealed). Thus, by enacting section 351.574.2, the legislature imposed an additional requirement on the successors to foreign corporations which previously did business in Missouri without authority and on the foreign corporation's assigns if the assignment is based on a cause of action which accrued to the foreign corporation out of the unauthorized business it conducted in Missouri where such successors and assigns seek to prosecute a cause of action in Missouri's courts.

 The word "maintain" within section 351.574 is key to understanding the legislative intent. In determining the legislative intent, statutory words and phrases are taken in their plain and ordinary meaning. *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338, 340 (Mo. banc 1991). However, the word "maintain" can be ambiguous. "Maintain" means to "carry on," "continue," "sustain," and "keep in force," but the word can also mean to "commence." *Black's Law Dictionary*, 953 (6th ed. 1990).

Other courts, when construing statutes, have considered whether the word "maintain" means to begin or commence an action or whether it means to continue to prosecute the action. An Iowa statute similar to Missouri's and based on the Model Business Corporation Act, provided that no foreign corporation transacting business in Iowa without a certificate of authority to transact business in the state would be permitted to maintain an action, suit or proceeding in any Iowa court until such corporation obtained a certificate of authority. *Inn Operations, Inc. v. River Hills Motor Inn Co.*, 261 Iowa 72, 152 N.W.2d 808, 813 (1967). The Iowa Supreme Court observed that the word "maintain" had been interpreted by other courts to mean "bring" or "begin," and by others, to have a different meaning. *Id.*, 152 N.W.2d at 813–14. The court said the word "maintain" within the Iowa statute did not inhibit the institution of the action, but the foreign corporation, which was doing business in Iowa without authority, could not prosecute its cause of action until it first complied with the terms of the statute which required it to possess a certificate of authority to transact business. *Id.* at 814.

The word "maintain" was within a Nevada statute providing that a foreign corporation shall not be allowed to commence, maintain, or defend any action or proceeding in any Nevada court until it shall have fully complied with certain statutory requirements. *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 93 Nev. 270, 563 P.2d 582, 584 (1977). The Nevada Supreme Court determined the word "maintain" within the statute meant that a corporation which is qualified to do business in Nevada at the time it commenced an action may not continue to prosecute the action when it subsequently becomes unqualified because of its failure to comply with continuing statutory requirements. *Id.*

In the case of *Amman Food & Liquor, Inc. v. Heritage Insurance Co.*, 65 Ill. App.3d 140, 22 Ill.Dec. 242, 382 N.E.2d 562 (1978), the Illinois Court of Appeals considered whether Amman Food & Liquor, Inc., a corporation that was dissolved by the Secretary of State of Illinois for delinquency in payment of a franchise tax, could sue Heritage Insurance Co. to compel Heritage to pay Amman's claim on a fire insurance policy. Heritage contended that Amman was without capacity to commence an action at the time it filed suit. *Id.*, 22 Ill.Dec. at 245, 38 N.E.2d at 565. The court considered whether the word "maintain" in the Illinois Business Corporation Act, section 142, barred delinquent corporations which had not paid all franchise taxes owed and which had authority to "commence" certain actions pursuant to section 94 from "continuing prosecution" of a law suit. *Id.*, 22 Ill.Dec. at 247, 38 N.E.2d at 567. The court, recognizing that the word "maintain" is ambiguous, determined that the harmonious resolution between two sections of the statute necessitated the word "maintaining" in Section 142 to mean more than to commence a law suit. *Id.* The court determined that the word "maintain" meant "continuing prosecution of an action." *Id.*

The word "maintain" within subsection 351.574.2 means more than to commence an action. It means to continue to conclusion. Section 351.574.2 requires a foreign corporation which previously did business in Missouri without possessing a certificate of authority to transact business, and which no longer conducts business in this state, to acquire a certificate of authority to transact business in order to initiate and to prosecute to conclusion a cause of action that accrued as a result of that business it conducted.

The preliminary writ of prohibition issued September 18, 1992, is quashed and held for naught.

All concur.